IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**DOLLIE JEAN CRISP,**

      **Plaintiff,**

v.                                        Case No.: 3:15-cv-01929

**CAROLYN W. COLVIN,**
**Acting Commissioner of the Social**
**Security Administration,**

      **Defendant.**

## MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner") denying plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently before the Court on the parties' motions for judgment on the pleadings as articulated in their briefs. (ECF Nos. 11, 14, 15, 16). Both parties have consented in writing to a decision by the United States Magistrate Judge. (ECF Nos. 4, 6). The Court has fully considered the evidence and the arguments of counsel. For the reasons that follow, the Court **DENIES** Plaintiff's request for reversal, (ECF No. 11); **GRANTS** Plaintiff's requests for remand based on new and material evidence, (ECF No. 11, 15, 16); **DENIES** Defendant's request to affirm the decision of the Commissioner, (ECF No. 14); and **REMANDS** this matter pursuant to sentence six of 42 U.S.C. § 405(g).

## I. <u>Procedural History</u>

Plaintiff, Dollie Jean Crisp (hereinafter referred to as "Claimant"), filed for SSI on October 23, 2011, alleging a disability onset of January 1, 2003, due to "hearing problems, headaches, HBP [high blood pressure], fibroids [and] feet problems." (Tr. at 11, 199). The Social Security Administration ("SSA") denied the application initially and upon reconsideration. (Tr. at 11). Claimant filed a written request for an administrative hearing, which was held on July 23, 2013, before the Honorable Michele M. Kelley, Administrative Law Judge ("ALJ"). (Tr. at 26-73). By decision dated August 30, 2013, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-21). The ALJ's decision became the final decision of the Commissioner on December 17, 2014, when the Appeals Council denied Claimant's request for review. (Tr. at 1–5). On February 19, 2015, Claimant timely brought the present civil action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The Commissioner filed an Answer and Transcript of Proceedings on May 1, 2015. (ECF Nos. 9, 10). Thereafter, the parties filed their briefs in support of judgment on the pleadings. (ECF Nos. 11, 14).

On November 19, 2015, Claimant filed a supplemental brief in support of remand, advising the Court that she had recently been awarded SSI, with benefits beginning on February 1, 2015. (ECF No. 15). Relying on Fourth Circuit precedent, Claimant argued that her disability determination constituted new and material evidence, which necessitated reversal and remand of the ALJ's earlier denial of benefits. Claimant further advised the Court that she had requested copies of the documentation supporting her disability award and intended to submit them to make a showing of the new and material evidence justifying reversal and remand of this action. (*Id.*).

2

On January 8, 2016, Claimant filed a second supplemental brief, attaching several pieces of new evidence used by the SSA in making the determination that Claimant was entitled to SSI. (ECF Nos. 16, 16-1, 16-2, 16-3, 16-4, 16-5). The Disability Determination and Transmittal form confirmed that Claimant was awarded benefits on the basis that she met Listing 12.05C in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). (ECF No. 16-1 at 1). On January 8, 2016, the Court entered an Order allowing the Commissioner through and including January 29, 2016 in which to file a responsive memorandum to Claimant's second supplemental brief. (ECF No. 17). The time for filing the response has expired, and no response has been forthcoming. Accordingly, this matter is fully briefed and ready for resolution.

## II.  Claimant's Background

Claimant was 40 years old on the disability onset date, and 50 years old at the time of the administrative hearing. (Tr. at 11, 195). She completed the twelfth grade, (Tr. at 200), and could read and write in English. (Tr. at 198). The ALJ found Claimant capable of performing her past relevant work as a laundry worker. (Tr. at 19).

## III.  Summary of ALJ's Findings

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving disability, defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. § 416.920. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful

3

employment. *Id.* § 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 416.920(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments contained in the Listing. *Id.* § 416.920(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 416.920(e). After making this determination, the next step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to establish, as the final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. *Id.* § 416.920(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger,* 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review." 20 C.F.R. § 416.920a. First, the SSA evaluates the claimant's pertinent signs, symptoms, and

4

laboratory results to determine whether the claimant has a medically determinable mental impairment. If such impairment exists, the SSA documents its findings. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 416.920a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines the severity of the limitation. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning, and concentration, persistence or pace) and "none" in the fourth (episodes of decompensation) will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the SSA compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. 20 C.F.R. § 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual function. 20 C.F.R. § 416.920a(d)(3).

      In this case, the ALJ determined that Claimant satisfied the first inquiry, because she had not engaged in substantial gainful activity since October 23, 2011, the date of the application. (Tr. at 13, Finding No. 1). Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of obesity, chronic pain syndrome, and sensorineural hearing loss. (Tr. at 13-14, Finding No. 2). The ALJ further found that Claimant's allegations of depression and anxiety, considered singly and in combination, did not cause more than minimal limitation in the Claimant's ability to perform basic

mental work activities. (Tr. at 13). The ALJ also found Claimant's allegations of hypertension to be non-severe. (*Id.*).

At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any impairment contained in the Listing. (Tr. at 14-15, Finding No. 3). Consequently, the ALJ determined that Claimant had the RFC to:

> [P]erform a range of medium work as defined in 20 CFR 416.967(c) as follows: she can lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently, stand/walk six hours out of an eight-hour workday, and sit six hours out of an eight-hour workday. The claimant can frequently climb ramps/stairs, balance, stoop, kneel or crouch, but only occasionally crawl. She should never climb ladders, ropes or scaffolds. She can frequently lift to the front and laterally with both upper extremities, but cannot reach overhead with the right upper extremity. She can frequently perform fine (fingering) and gross manipulations (handling) with both upper extremities. She should avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dust, gases, poor ventilation, and hazards (moving machinery, unprotected heights, etc.). She should avoid even moderate exposure to noise, no more than three on the noise level scale of five. She should have only superficial interaction with supervisors, coworkers, and the public.

(Tr. at 15-19, Finding No. 4). Based upon the RFC assessment, the ALJ determined at the fourth step that Claimant was able to perform past relevant work as a laundry worker. In addition, the ALJ found Claimant could perform jobs at the medium level such as hand packer and inspector; at the light level such as marker/labeler, and at the sedentary level such as assembler, and small machine operator. (Tr. at 20-21, Finding No. 5). Therefore, the ALJ concluded that Claimant was not disabled as defined in the Social Security Act. (Tr. at 21, Finding No. 6).

### IV. Claimant's Challenges to the Commissioner's Decision

Claimant raises two challenges to the Commissioner's decision in her brief and one additional challenge in her supplemental briefs. (ECF Nos. 11 and 15). In her brief, Claimant argues that she appeared *pro se* at the administrative hearing and was "grossly

ill-prepared" to represent herself. Claimant contends, notwithstanding her obvious shortcomings, the ALJ (1) failed to properly explain the benefits of obtaining representation and (2) failed to fulfill an ALJ's duty to develop the record, which was a heightened duty in view of Claimant's *pro se* status.

In her supplemental briefs, Claimant argues that her recent disability award mandates remand of the ALJ's decision under this district's precedent. Claimant relies upon *Bradley v. Barnhart,* 463 F.Supp.2d 577 (S.D.W.Va. 2006), and *Reichard v. Barnhart,* 285 F.Supp.2d 728 (S.D.W.Va. 2003), cases in which this court held that a finding of disability commencing less than one week after an ALJ's decision of nondisability necessitates remand of the ALJ's decision. Claimant acknowledges that her disability was not found to commence less than one week after the ALJ's decision; however, she points outs that this discrepancy was due to the regulation precluding her from filing a second application before the Appeals Council had issued its decision on her request for review. Claimant emphasizes that when she was finally permitted to file the second application, she was awarded benefits effective on the first allowable date, which in Claimant's view, is tantamount to the factual circumstances in *Bradley* and *Reichard.* Moreover, Claimant alleges that the physical and mental impairments forming the basis of her recent disability award are the same impairments that were present when she appeared before the ALJ in the instant case. According to Claimant, if the ALJ had properly developed the record, the evidence would have established that Claimant met Listing 12.05C, and the outcome of the administrative hearing would have been different.

### V.  **Standard of Review**

The issue before this Court is whether the final decision of the Commissioner denying Claimant's application for benefits is supported by substantial evidence. In

7

*Blalock v. Richardson*, the Fourth Circuit Court of Appeals defined substantial evidence as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Id.* Instead, the Court's duty is limited in scope; it must adhere to its "traditional function" and "scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). Thus, the ultimate question for the Court is not whether the Claimant is disabled, but whether the decision of the Commissioner that the Claimant is not disabled is well-grounded in the evidence, bearing in mind that "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner]." *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987).

A court may remand the Commissioner's decision for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). A sentence four remand is appropriate when the Commissioner's decision is not supported by substantial evidence, the Commissioner incorrectly applies the law in reaching the decision, or the basis of the Commissioner's decision is indiscernible. *See Brown v. Astrue,* Case No. 8:11–03151–RBH–JDA, 2013 WL 625599 (D.S.C. Jan. 31, 2013) (citations omitted). In contrast, a sentence six remand

8

"may be ordered in only two situations: (1) where the Commissioner requests remand before answering the complaint, or (2) where new, material evidence is adduced that was for good cause not presented before the agency." *Snider v. Colvin,* Civil Action No. 6:12-cv-00954, 2013 WL 4880158, at *4 (S.D.W.Va. Sept. 12, 2013) (*citing Shalala v. Schaefer,* 509 U.S. 292, 297, n.2 (1993)). Evidence is considered new if it is "neither duplicative nor cumulative," *Bradley,* 463 F.Supp.2d at 581, and is material if it "bear[s] directly and substantially on the matter in dispute," and generates a "reasonable possibility that the new evidence would have changed the outcome of the determination." *Id.* at 579, citing *Bruton v. Massanari,* 268 F.3d 824 (9th Cir. 2001). In this circuit, a remand under sentence six for assessment of new and material evidence is appropriate if four criteria are met: (1) the evidence is relevant and not cumulative; (2) the Commissioner's decision "might reasonably have been different" had that evidence been presented; (3) good cause for failure to submit the evidence before the Commissioner is established; and (4) Claimant offers "at least a general showing of the nature" of the newly discovered evidence. 42 U.S.C. 405(g); *Borders v. Heckler,* 777 F.2d 954, 955 (4th Cir. 1985). "With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings." *Hay v. Colvin*, No. 8:15-CV-00236-JDA, 2016 WL 536746, at *3 (D.S.C. Feb. 11, 2016) (citations omitted).

## VI. <u>Analysis</u>

Having carefully reviewed the record, the Court agrees with Claimant that she has submitted new and material evidence necessitating remand under sentence six of 42 U.S.C. § 405(g). In particular, on remand, the Commissioner shall consider evidence

regarding the level of Claimant's intellectual functioning to determine its effect on the accuracy of the ALJ's disability determination.[1]

### *The ALJ's Decision*

On August 30, 2013, the ALJ found that Claimant had severe impairments of obesity, chronic pain syndrome, and sensorineural hearing loss. (Tr. at 13). The ALJ considered other impairments alleged by Claimant, including the mental impairments of depression and anxiety, but found them to be nonsevere as they caused no more than minimal limitation in Claimant's ability to perform basic work activities. (*Id.*). The ALJ compared Claimant's impairments to the Listing and concluded that her impairments did not meet or equal any listed impairment. Notably, the ALJ did not consider Listing 12.05; most probably, because there were no IQ test scores in the record. The ALJ determined that Claimant could perform a reduced range of medium level exertional work, with some manipulative, environmental, postural, and other nonexertional limitations. The ALJ specifically found that Claimant "has no severe mental impairment." (Tr. at 15, 19). Based upon these findings, the ALJ determined that Claimant was not disabled.

It is significant that on May 2, 2012, Lisa C. Tate, M.A., performed a mental status examination of Claimant at the request of the SSA. (Tr. at 368-72). Ms. Tate interviewed Claimant regarding her educational history and learned that Claimant was placed in special education classes beginning in the third grade. Claimant further reported that she had to repeat more than one grade, although she was unsure of which grades were repeated. (Tr. at 369). Claimant also stated that she attended public school until age 21, at which time she graduated. After graduation, she completed a laundry program offered

---

[1] Given that this matter will be remanded for further consideration of a more developed record, and Claimant is now represented by counsel, the merits of her first two challenges need not be addressed.

10

at the West Virginia Rehabilitation Center. (*Id.*). Ms. Tate did not administer any intelligence testing and had no old test results to examine; consequently, she deferred on providing a diagnosis related to Claimant's intellectual functioning. (Tr. at 370). However, in view of Claimant's educational history, Ms. Tate recommended that intellectual and achievement testing be performed to determine Claimant's level of intellectual functioning. (*Id.*). Notwithstanding this recommendation, intelligence and achievement testing was not administered to Claimant prior to the ALJ's decision of nondisability.

### *The New Evidence*

In her recent submission, Claimant offers several pieces of new documentation. First, she provides a Disability Determination and Transmittal form which confirms a finding of disability beginning December 22, 2014. (ECF No. 16-1 at 1). The form states the cause of disability to be Listing 12.05C, and the supporting data to be found in a Psychiatric Review Technique Form prepared by Jeff Boggess, Ph.D. (*Id.*). Claimant also supplies the Psychiatric Review Technique Form prepared by Dr. Boggess. (ECF No. 16-2). Dr. Boggess opined that Claimant meets Listing 12.05C based upon diagnoses of intellectual disability, anxiety-related disability, and somatoform disorder. (*Id.* at 1). Dr. Boggess indicated that Claimant meets both the diagnostic description for an intellectual disability, as well as the specific severity criteria contained in paragraph C, which is "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (*Id.* at 5). With respect to Claimant's anxiety-related disorder, Dr. Boggess assessed Claimant with Generalized Anxiety Disorder, (*Id.* at 6), and described her somatoform disorder as Pain Disorder. (*Id.* at 7). When asked to rate Claimant's degree of limitation in the four broad categories of function described as paragraph "B" criteria, Dr. Boggess

11

opined that Claimant is mildly limited in activities of daily living; moderately limited in maintaining social functioning, and markedly limited in maintaining concentration, persistence, and pace. (ECF No. 16-2 at 11). He found no evidence of episodes of decompensation of extended duration or of paragraph "C" criteria. (*Id.* at 11-12).

Next, Claimant submits an April 30, 2015 Adult Mental Profile performed by Angela Null, M.S., of Aspire Occupational Rehabilitation, at the request of the SSA. (ECF No. 16-3). Ms. Null conducted a clinical interview, mental status examination, and review of records. She also administered a Wechsler Adult Intelligence Scale-Fourth Edition ("WAIS-IV") and a Wide Range Achievement Test ("WRAT"), both generally accepted intelligence tests. On intelligence testing, Claimant scored between 54 and 66, with a full scale IQ of 53. (*Id.* at 3). Her cognitive ability was determined to be at the "extremely low range of intellectual functioning." (*Id.*) Ms. Null felt that Claimant put forth a relatively good effort on the test, and the results were reasonably valid, and were an "accurate estimate of her current skills and abilities." (*Id.* at 4). On the WRAT, Claimant scored at the 4.7 grade equivalent in word reading, 4.4 grade equivalent in spelling, and 3.2 grade equivalent in math computation. ((*Id.*) Ms. Null believed these results were valid, as well. Based upon Claimant's test results, Ms. Null diagnosed her with mild mental retardation. Ms. Null added that Claimant's intellectual functioning likely fell between the 50-70 range and was consistent with her vocational and educational history. (*Id.* at 6).

Finally, Claimant provides a Physical Residual Functional Capacity Assessment completed by Narenda Parikshak, M.D. on July 3, 2015 and assorted medical records reflecting physician offices visits and diagnostic testing conducted in 2014 and 2015. (ECF Nos. 16-4, 16-5). The RFC assessment references an evaluation of Claimant at Tri State Occupational Medicine completed on June 16, 2015; however, the evaluation is not

contained in the evidence tendered by Claimant.

### Sentence Six Remand Assessment

Applying the criteria set forth in *Borders v. Heckler, supra,* Claimant has met her burden to justify remand, but only to consider the evidence related to her intellectual functioning. The other evidence submitted by Claimant does not provide a basis for remand, because it is neither relevant nor material to a determination of disability at the time the application was first filed. Although Claimant complained of anxiety, depression, fibroids, and chronic pain during the pendency of her first application, the newly submitted evidence pertaining to those chronic conditions does nothing more than reflect their status months and years after the ALJ's decision. *See Williams v. Astrue,* Civil No. 3:11CV208-JAG, 2012 WL 1267890, at *9 (E.D.Va. Mar. 28, 2012 ("New evidence must relate to the determination of disability *at the time the application was first filed,* and it must not concern evidence of a later-acquired disability, or of the 'subsequent deterioration of the previously non-disabling condition'") (quoting *Szubctk v. Sec'y of Health & Human Services,* 745 F.2d 831. 833 (3rd Cir. 1984) (emphasis in original). On the other hand, the evidence of Claimant's intellectual dysfunction and of her 2015 intelligence and achievement test scores presumably mirror the evidence she would have provided if the impairment had been developed in 2011. *See Luckey v. U.S. Dep't of Health and Human Servs.,* 890 F.2d 666, 668 (4th Cir. 1989) (stating that an individual's IQ remains relatively constant throughout her life, absent evidence of a change in her intelligence functioning).

Second, the Commissioner's decision may reasonably have been different if evidence of Claimant's diminished intellectual functioning had been available. Claimant was ultimately determined to be disabled, because she met Listing 12.05C. To meet

Listing 12.05, a claimant must establish that she has an intellectual impairment that satisfies both the *diagnostic description* of mental retardation[2] and the *severity criteria* set forth in one of four paragraphs. The diagnostic description of mental retardation, sometimes called the first prong of the Listing, is "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.05. Once the claimant has established intellectual dysfunction meeting the diagnostic description, she can demonstrate the requisite level of severity under paragraph C by showing "a valid verbal, performance, or full scale IQ of 60 through 70 **and** a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* § 12.05C (emphasis added); *Hancock v. Astrue*, 667 F.3d 470, 473 (4th Cir. 2012). Thus, in order to meet the second prong of Listing 12.05C, the claimant must have undergone generally accepted intelligence testing and have valid IQ scores within the required range. In regard to the third prong, Social Security regulations explain that the degree of functional limitation imposed by the additional impairment must be assessed to determine if it significantly limits the claimant's physical or mental ability to do basic work activities, "i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c)." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00. If the additional impairment does not result in limitations that are '"severe" as defined in §§ 404.1520(c) and 416.920(c)," the additional impairment does not impose "an additional and significant

---

[2] The term "mental retardation" was replaced with "intellectual disability" effective September 3, 2013. 78 Fed.Reg. 46,499–46,501 (Aug. 1, 2013). This change "does not affect the actual medical definition of the disorder or available programs or service," *Id.* at 46,500. The structure of the listing, its diagnostic description, and its severity criteria are also unchanged.

14

work-related limitation of function."[3] *Id.*

Here, Claimant's full scale IQ score when tested by Ms. Null was 53, and Ms. Null verified that the test results were valid. "Generally, the results obtained by a licensed psychologist following the administration of accepted intelligence tests are entitled to considerable weight in Social Security cases although they are not required to be accepted." *Maybank v. Astrue,* No.4:08–0643–MBS, 2009 WL 2855461, at *11 (D.S.C. Aug. 31, 2009) (*citing Clark v. Apfel,* 141 F.3d 1253, 1255 (8th Cir.1998)). Moreover, absent evidence of a change in an individual's intellectual capacity, a presumption exists that the individual's intelligence remains relatively stable throughout her life. *Luckey,* 890 F.2d at 668. Although the IQ score alone would not establish that Claimant had deficits in adaptive functioning that manifested during the developmental period, other evidence in the record might verify that diagnostic description. For example, Dr. Boggess's evaluation, Ms. Null's assessment of Claimant's adaptive functioning, and Claimant's history of educational difficulties all provide material evidence on Claimant's adaptive functioning. *See, e.g., Salmons v. Astrue,* 5:10-cv-195-RLV, 2012 WL 1884485,

---

[3] The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit') has not restricted the meaning of "significant work-related limitation" in 12.05C to the definition of "severe impairment" found at §§ 404.1520(c) and 416.920(c). Instead the Fourth Circuit has explained the term in context of its peripheries. The Court has stated that a "significant limitation under section 12.05C need not be disabling in and of itself." *Branham v. Heckler*, 775 F.2d 1271, 1273 (4th Cir. 1985). That is, "something less than a preclusion from any substantial gainful employment must apply." *Id.* Thus, "if a claimant cannot return to his past relevant work, he has established a work-related limitation of function which meets the requirements of § 12.05C" regardless of whether the impairment is found to be severe. *Flowers v. United States Dep't of Health & Human Servs.*, 904 F.2d 211, 214 (4th Cir. 1990); *see also Branham*, 775 F.2d at 1273-74. ). Additionally, the Fourth Circuit has held that "[a]n illness or injury imposes a significant limitation when its effect on the claimant's ability to work is more than slight or minimal." *Pullen v. Bowen*, 820 F.2d 105, 109 (4th Cir. 1987). The Court acknowledges that an additional severe impairment or combination of impairments will automatically establish the third prong of section 12.05C, as "the Secretary has defined a severe impairment or combination of impairments as those which significantly limit an individual's physical or mental ability to do basic work activities." *Luckey v. United States Dep't of Health & Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989); *Berry v. Astrue*, No. 3:10-cv-00430, 2011 WL 2462704, at *14 (S.D.W.V. Jun. 17, 2011).

at *7 (W.D.N.C. May 23, 2012) ("[F]unctional academic skill is the primary measure of deficits in adaptive functioning before age 22."). In the end, Claimant's IQ scores, combined with her adaptive deficits, and her other severe impairments reasonably would have sufficed to meet Listing 12.05C, or perhaps 12.05B. Even if Claimant's impairments had not met a listing, the ALJ might reasonably have altered Claimant's RFC finding to account for additional functional limitations associated with her intellectual disability.

The Court further finds that good cause exists for Claimant's failure to submit evidence of her intellectual functioning prior to the Commissioner's decision. Claimant did not obtain intelligence and achievement testing until after the Appeals Council issued its decision; therefore, the data did not exist and could not have been presented for consideration beforehand. While it is true that Claimant could have alleged an intellectual disability in her first application and during the administrative hearing, Claimant was proceeding *pro se*. Assuming that Claimant had an intellectual disability, she likely did not appreciate the importance of addressing her past difficulties in school and her limitations in reading, writing, and arithmetic. In contrast, the ALJ was on notice that Claimant had educational, and perhaps intellectual, deficits; yet, the ALJ failed to request appropriate testing. Ms. Tate noted in her expert report Claimant's history of special education, delayed graduation, and rehabilitation services. Ms. Tate also recommended that Claimant undergo intelligence and achievement testing to determine her level of intellectual functioning. Despite Ms. Tate's concern, raised months before the administrative hearing, the ALJ failed to investigate Claimant's intellectual functioning. An ALJ "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the Claimant when that evidence is inadequate." *Walker v. Harris,* 642 F.2d 712, 714 (4th

Cir. 1981). As Claimant points out, the duty to develop the record is heightened in the case of an unrepresented claimant. "[A] failure on the part of the ALJ to perform this duty may result in prejudice to the claimant, thus requiring the case to be remanded for further proceedings." *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 272-73 (D. Md. 2003) (citing *Walker,* 642 F.2d at 714). In light of Claimant's *pro se* status and her questionable intellectual functioning, the ALJ should have further developed the record before concluding that Claimant had no severe mental impairment.

In regard to the last criteria, Claimant offered more than a general showing of the nature of the newly discovered evidence. Indeed, she was able to submit the summary of her intelligence and achievement testing, Dr. Null's report, and Dr. Boggess's evaluation. Therefore, Claimant has fully satisfied her final requirement.

### VII. Conclusion

Wherefore, the Court finds that the Commissioner's decision is not supported by substantial evidence in view of new and material evidence regarding Claimant's intellectual functioning. Therefore, by Judgment Order entered this day, the final decision of the Commissioner is **VACATED** and this matter is **REMANDED** for further proceedings pursuant to sentence six of 42 U.S.C. § 405(g).

The Clerk of this Court is directed to transmit copies of this Order to counsel of record.

**ENTERED:** February 29, 2016

Cheryl A. Eifert
United States Magistrate Judge